**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-CV-

TRENTON HARRISON ORENDORF,

    Plaintiff,

v.

OFFICE OF BEHAVIORAL HEALTH;
COLORADO MENTAL HEALTH INSTITUTE – PUEBLO;
FORENSIC COMMUNITY-BASED SERVICES PROGRAMS;
ARAPAHOE/DOUGLAS MENTAL HEALTH NETWORK N/K/A ALLHEALTH NETWORK;
JAMES PURVIANCE, in his individual and official capacities
WILLIAM MARTINEZ, in his individual and official capacities;
TED SMITH, in his individual and official capacities; and
JOHN OR JANE DOE NURSES, in his/her individual and official capacities.

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Trenton Harrison Orendorf ("Orendorf"), states his Complaint, as follows:

### JURISDICTION AND VENUE

1. This action primarily arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. 42 U.S.C. § 1988 supports Plaintiff's claims for attorney fees and costs. This Court has jurisdiction over all claims arising out of federal law pursuant to 28 U.S.C. § 1331.

2. Plaintiff also brings claims under state law. That claim is so related to Plaintiff's federal claims, it forms part of the same case or controversy under Article III of the Constitution. Accordingly, this Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2). All events alleged herein occurred within the State of Colorado.

## PARTIES

4. At all relevant times, Plaintiff was a citizen of the United States of America, residing in Colorado.

5. At all relevant times, Defendant Office of Behavioral Health ("OBH") provided evaluation, treatment and other services to the forensic population statewide. OBH is responsible for policy development, service provision and coordination, program monitoring and evaluation, and administrative oversight for the State's behavioral health system.

6. At all relevant times, Defendant Colorado Mental Health Institute at Pueblo ("CMHIP") was a state operated inpatient psychiatric hospital. The hospital was under the direction of the Colorado Department of Human Services, Office of Behavioral Health.

7. At all relevant times, Defendant Forensic Community Based Services ("FCBS") was the community-based treatment and monitoring program for persons found Not Guilty by Reason of Insanity who are under the authority of the State of Colorado.

8. At all relevant times, Defendant Arapahoe/Douglas Mental Health Network n/k/a AllHealth Network ("AHN") was a non-profit healthcare organization doing business in Colorado.

9. At all relevant times, Defendant James Purviance ("Purviance") was a Licensed marriage and family therapist and employed at AHN.

10. At all relevant times, Defendant William Martinez ("Martinez") was the manager/director of FCBS.

11. At all relevant times, Defendant Ted Smith ("Smith") was the psychiatric provider for CMHIP.

12. Upon information and belief, John and Jane Doe healthcare providers were at all times material and relevant, licensed by the state of Colorado as, therapists, nurses, and doctors and employees of FCBS and/or CMHIP.

## GENERAL ALLEGATIONS

13. On or about January 25, 2012, Orendorf was found Not Guilty by Reason of Insanity and admitted as an inpatient to CMHIP.

14. On November 9, 2015, Orendorf was granted conditional release from CMHIP. Pursuant to CO Rev. Stat § 16-8-115 (3) (c), a defendant who has been conditionally released remains under the supervision of the department of human services until the committing court enters a final order of unconditional release.

15. The terms and conditions of Orendorf's conditional release included compliance with therapeutic/psychiatric treatment through FCBS, in conjunction with AHN and CMHIP, requesting permission to travel out of state for longer than two weeks, and urinalysis testing.

16. Orendorf was able to return home to live with his wife, Shannon Orendorf, and children. He consistently attended all requisite counseling sessions with Purviance at AHN in coordination with his case manager at FCBS, Lisa Collins.

17. Between November 2013 and February 2015; during the course of Orendorf's supervision by CMHIP, he was seen and treated by Smith, who was in charge of prescribing various medications, including antipsychotics. Specifically, Smith prescribed a drug called Latuda, which is an antipsychotic that treats schizophrenia, bipolar disorder, and other brain conditions.

18. Yet, any reasonable treatment provider should have known that Latuda can cause a condition called Tardive Dyskinesia ("TD"), especially in African American patients. TD causes stiff, jerky movements of your face and body that you cannot control. Orendorf is African American and was experiencing severe symptoms and side effects of TD.

19. Orendorf repeatedly requested and begging for Smith to take him off the Latuda as the side effects were so severe, he couldn't breathe or talk. Yet, Smith refused and would not listen to his pleas for help. Eventually, Orendorf was forced to seek medical care from another treatment provider, Dr. Reed, due to the severity of TD symptoms he was experiencing. Dr. Reed immediately removed Orendorf from Latuda and questioned the medical practices of Smith. This led to Smith's growing abhorrence for Orendorf.

20. Despite challenges and physical ailments, Orendorf was compliant with all terms and condition of his release. Documented case management and therapeutic reports show his diligence and success in meeting his supervision requirements.

4

21. In fact, in March 2019, he was preparing for his court appearance in Douglas County Court and request for unconditional release, due to his successful compliance for over three years on conditional release.

22. Unfortunately, Orendorf would not experience that opportunity, despite his best efforts and compliance with the program.

23. Once Martinez and Smith were made aware of Orendorf's potential for unconditional release, Martinez filed an affidavit of arrest warrant for Orendorf with the Douglas County Court.

24. On or about April 8, 2019, unbeknownst to Orendorf, Martinez filed a motion for revocation of Orendorf's conditional release and request for an arrest warrant citing the following reasons:

   a. unapproved travel in October 2018,

   b. five missed urinalysis tests—three missed tests in 2018 and two missed tests in 2019, and

   c. opioid dependency.

25. Shortly thereafter, on or about April 8, 2019, Orendorf was made aware of the warrant and immediately turned himself in at CMHIP.

26. Orendorf was unaware and shocked by FCBS, Martinez's, claims of non-compliance and request for revocation because all of the allegations against him were false.

27. Upon entry to CMHIP, Orendorf was informed that Smith was once again his assigned treatment provider, despite the obvious conflict of interest from Orendorf's previous interactions and stay at CMHIP. Orendorf had no choice but

5

to meet with Smith for an intake evaluation and treatment. Smith immediately became combative and insulative with Orendorf, calling him a "liar" and accusing him of being "full of shit."  When Orendorf asked Smith why he was so angry and acting this way, Smith stated that he "wanted revenge for the Latuda issue back in 2015."

28. Contrary to CMHIP policy and procedure, Smith only met with Orendorf one other time during his fifty-one-day confinement at CMHIP.

29. Similarly, in 2017, CMHIP was cited for failure to adequately monitor and evaluate the quality of care provided to the patients at the facility.

30. Orendorf was able to show proof that directly controverted Martinez's claims of non-compliance.

31. Regarding the allegations of unapproved travel from October 2018; Orendorf and his wife, followed protocol and communicated with AHN and FCBS in order to request approved travel. Documented reports support their communications directly with AHN and Purviance requesting travel as required and it was the treatment providers who failed to communicate with each other that caused the violation—not Orendorf.  Shortly thereafter, around August 2019, Purviance was laid off from AHN due to his 'communication issues.'

32. Regarding the allegations of opioid dependence, Orendorf suffered multiple surgical interventions for unrelated issues, three total knee replacements during that time, and was prescribed pain medications. He was able to produce medical records and prescription records for all opioids prescribed due to undergoing

surgery where pain medications are required. This was not an opioid dependency issue.

33. Regarding the missed urinalysis tests, Orendorf was able to show that he was approved to miss all tests cited by Martinez, as he was either in surgery or in the hospital in recovery, making it physically impossible to submit a urinalysis.

34. However, subject to extreme pressure, threats, and fearful of additional retaliation from Martinez and Smith, Orendorf was forced to agree to a stipulated revocation.

35. Ultimately, Orendorf was subject to confinement at CMHIP for fifty-one days, from April 9, 2019 to May 29, 2019.

36. During the course of his confinement, Orendorf was exposed to human waste and needlessly suffered dehydration and skin infections due to the grossly unsanitary conditions at CMHIP.

37. Specifically, Orendorf's housing unit did not provide patients with potable water. The only source of clean drinking water was an old drinking fountain rendered completely unusable due the accumulation of rust/mineral deposits and bacterial growth surrounding the spout.

38. His housing unit only provided one bathroom for over thirty patients and that bathroom was extremely hazardous and severely unsanitary with human feces coating the walls and urine pooled on the floor.

39. Witness reports from family members and other patients housed with Orendorf, at that time, confirm unsanitary conditions.

40. CMHIP in conjunction with FBCS, and AHN, billed and received a total of $41,430.83 from Orendorf's medical insurance company during his 2019 confinement. These agencies are paid or reimbursed for inpatient care only if the patient's condition requires inpatient care and hospitalization.

## FIRST CLAIM FOR RELIEF
### (1983 Violation – Constitutional Failure to Train and/or Supervise, Against All Defendants)

41. Plaintiff incorporates all other paragraphs of this complaint as though fully set forth herein.

42. At all relevant times, Defendants acted under color of state law.

43. The actions or inactions of Defendants as described herein intentionally deprived Orendorf of his right to be free of cruel and unusual punishment and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

44. The acts or omissions of all Defendants were the legal and proximate cause of Orendorf's injuries.

45. The acts or omissions of all individual Defendants were moving forces and substantial significantly contributing proximate causes of Plaintiff's injuries.

46. As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983 – Eighth Amendment Violation**
**Failure to Provide Medical Care and Treatment**
**(Against All Defendants)**

47. Plaintiff incorporates all other paragraphs of this complaint as though fully set forth herein.

48. At all relevant times, Defendants acted under color of state law.

49. At all times relevant to the allegations in this Complaint, Defendants knew or should have known of Orendorf's medical diagnosis and medical conditions.

50. Nevertheless, acted with deliberate indifference to Orendorf's constitutional right not to be denied necessary medical care, protected under the Eighth Amendment to the United States Constitution.

51. This intentional and purposeful conduct by the Defendants occurred without necessity, right, legal justification, or excuse, and with such conscious or callous indifference to the rights of Plaintiff as to rise to a level repugnant to the conscience of a reasonable person.

52. The Defendants reckless and/or intentional decisions to fail to provide Plaintiff with treatment amounts to deliberate indifference and willful and wanton disregard to the substantial risks of bodily injury and death to Plaintiff, depriving Plaintiff of life's necessities, in violation of Plaintiffs' Eighth Amendment rights to be free from cruel and unusual punishment.

53. The Defendants deliberate, intentional, willful, and wanton and/or reckless actions and inactions deprived Plaintiff of his rights under the Eighth Amendment to the United Defendants failed to train supervisors and staff or investigate and ratified the staff misconduct.

54. The actions or inactions of Defendants as described herein intentionally deprived Orendorf of his right to be free of cruel and unusual punishment and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America.

55. The acts or omissions of all Defendants were the legal and proximate cause of Orendorf's injuries.

56. The acts or omissions of all individual Defendants were moving forces and substantial significantly contributing proximate causes of Plaintiff's injuries.

57. As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages.

### THIRD CLAIM FOR RELIEF: FALSE IMPRISONMENT
### (Against All Defendants)

58. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

59. Defendants caused Plaintiff's illegal and false imprisonment by engaging in the acts and omissions described above, and by, inter alia:

> a. Intentionally restricting Plaintiff's freedom of movement;
>
> b. preventing Plaintiff from leaving CMHIP even though he did not meet the criteria for revocation.

60. Defendants false imprisonment of Plaintiff was undertaken illegally and without justification. Plaintiff knew, believed and understood that he was not free to leave CMHIP.

61. As a result of Defendants false imprisonment of Plaintiff, Plaintiff has suffered actual, economic and noneconomic injuries, damages and losses in an amount to be determined by the jury at trial.

## FOURTH CLAIM FOR RELIEF: EXTREME AND OUTRAGEOUS CONDUCT
**(Against all defendants)**

62. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

63. Defendants, acting by and through its employees and staff, acted in an extreme and outrageous fashion by engaging in the acts and omissions described above and by, inter alia:

    a) Refusing to permit Orendorf to leave CMHIP; and

    b) Threatening and intimidating Orendorf.

64. Defendants acted in an extreme and outrageous fashion by engaging in the acts and omissions described above.

65. Defendants extreme and outrageous conduct was reckless or intentional and caused Plaintiff to suffer extreme emotional distress.

66. Defendants directed its employees to engage in the extreme and outrageous conduct described herein and/or ratified its employees' extreme and outrageous conduct, thereby rendering Defendant vicariously liable for its employees' intentional and calculated conduct.

67. As a result of Defendants intentional infliction of emotional distress and extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer injuries, damages and losses in an amount to be determined by a jury at trial.

## FIFTH CLAIM FOR RELIEF: VIOLATION OF THE COLORADO ORGANIZED CRIME CONTROL ACT, "COCCA," C.R.S. § 18-17-101 et seq
(Against All Defendants)

68. Plaintiff hereby incorporates each and every averment set forth herein as if each and every averment were set forth verbatim herein.

69. For the purposes for the Colorado Organized Crime Control Act, "COCCA," C.R.S. § 18-17-103(2), Defendants are a COCCA enterprise.

70. Defendants activities affect interstate commerce.

71. At all times relevant, Defendants, either directly or indirectly, through a pattern of racketeering activity, as defined under C.R.S. § 17-103 (3) and (5) in violation of C.R.S. § 18-17-104(3).

72.  Defendants pattern of racketeering activity in violation of C.R.S. § 18-17-104(3) includes causing, directing or participating in the following enumerated racketeering acts:

> a. Multiple acts of wire and mail fraud in violation of 18 USC §§ 1341 and 1343 by using the Internet, interstate wires and the US mail for the purposes of advancing, furthering, executing, concealing, conducting, participating in or carrying out a scheme to defraud Plaintiff and others similarly situated by, inter alia, using or causing to be used interstate wires for the purposes of sending bills to Plaintiff's insurance company.
>
> b. Various acts of cybercrime in violation of C.R.S. § 18-5.5.-102, including:
> i. Accessing a computer or computer network for the purpose of creating fraudulent medical records;
> ii. Accessing a computer or computer network for the purpose of directing others to carry out the pattern of racketeering acts and fraudulent scheme described herein;
> iii. Accessing a computer for the purpose of defrauding Plaintiff in other similarly situated through false and deceptive advertising and internet advertising and;
> iv. Using a computer or computer network for the purpose of generating fraudulent bills and invoices to be sent to Plaintiff's insurance company.

73. Plaintiff further claims treble damages and attorney's fees as permitted by COCCA

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, and award him all relief as allowed by law and equity, including, but not limited to:

    a.    Actual economic damages as established at trial;

    b.    Compensatory damages, including, but not limited to those for past and future pecuniary and non-pecuniary losses, physical and mental pain, humiliation, fear, anxiety, loss of enjoyment of life, loss of liberty and privacy, loss of a sense of security and individual dignity, and other non-pecuniary losses;

    c.    Punitive damages for all claims as allowed by law in an amount to be determined at trial;

    d.    Pre- and post-judgment interest at the highest lawful rate;

    e.    Attorney fees and costs; and

    f.    Such further relief as justice requires.

## **REQUEST FOR TRIAL BY JURY**

Plaintiff demands a jury on all issues so triable.

DATED this 8th day of April 2021.

                Respectfully submitted,

                *s/Jill M. Jackson, Esq.*
                Law Office of Jill M. Jackson LLC.
                650 S. Cherry Street, Suite 1225
                Glendale, CO 80246